```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------  X
                                                            :
DERRELL C. JONES,                                           :
                                                            :
                              Plaintiff,                    :    **MEMORANDUM**
                                                            :    **DECISION AND ORDER**
                  - against -                               :
                                                            :    13 Civ. 0703 (BMC)
THE CITY OF NEW YORK, DET. ALAN                             :
DAAB, LT. DENNIS KLEIN, SGT. SHAUN                          :
MARA, DET. SEAN WARD, SGT.                                  :
MCKENNA, P.O. BRYAN PIERRE, JOHN                            :
AND JANE DOES,                                              :
                                                            :
                              Defendants.                   :
----------------------------------------------------------  X
```

**COGAN**, District Judge.

Plaintiff brought this action under several provisions of the Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq.*, and corresponding provisions of state law, for false arrest, malicious prosecution, and related claims arising out of his arrest for gun possession. Plaintiff has withdrawn his state law claims and his retaliation claim. His federal false arrest claims have been previously dismissed, and the remaining federal claims fail because plaintiff can point to no false statement that led to his prosecution, the decision to prosecute was made by a prosecutor, and there is a total absence of any facts upon which a jury could reasonably find malice.

**BACKGROUND**

The material facts are undisputed.[1] One of the police defendants, Detective Daab, obtained information from a confidential informant that armed gang members[2] were operating out of a residence and that they were illegally in possession of firearms. He obtained a search warrant based on that information and he and the other police defendants executed it.

The confidential information proved entirely correct. The place was awash in illegal guns and gang members. Plaintiff was in the living room when the police entered, and one of the people in the apartment was also in the living room holding an illegal firearm in plain view. That person bolted towards the back of the apartment together with three other males, and the police gave chase. One of the suspects threw a gun into a bathroom and another threw one into the front bedroom. Upon performing a protective sweep, police found another gun in the back bedroom, and upon a more thorough search, five guns in total were recovered: the one on the bathroom floor; three guns in the first bedroom – the one on the floor, one under a mattress, and

---

[1] There are two deficiencies with plaintiff's dispute of defendants' Local Rule 56.1 statement and his own counterstatement. The first is that both consist almost entirely of argument, not factual allegations, and to the extent plaintiff makes such arguments, I disregard them. The second is that plaintiff refuses to admit or deny many of the statements because of an alleged lack of discovery. However, prior to this motion, the Court specifically instructed plaintiff to bring any deficient discovery to the Court's attention, and plaintiff never did so. In any event, nowhere in his brief or in oral argument did plaintiff point to anything that is missing from this record.

[2] There is some dispute as to the name of the gang provided by the confidential informant. In a written statement, the confidential informant stated that the name of the gang operating out of the residence was "YB," which stands for "Young Bosses," and "Blood." However, defendants believed the gang to be called "Snow Gang," "Snow Grimey Gang," or "Grimey Gang." Regardless, it is undisputed that the confidential informant provided information that a gang was operating out of the premises in which plaintiff was found.

one in a plastic bin – and the one in the rear bedroom. At least nine occupants of the apartment, including plaintiff, were arrested.[3]

Detective Daab swore out a criminal complaint that describes the incident as set forth above. The matter then proceeded to arraignment. Plaintiff was arraigned on the gun charges together with two other defendants. As to bail, the lawyer argued, among other things, that plaintiff and one of the other criminal defendants did not have constructive possession of the guns. Their attorney (one attorney represented all three defendants at arraignment) asserted that plaintiff and one of the other criminal defendants did not live in the apartment and had no knowledge of the guns that were found in the apartment, other than the one that was held by another person sitting in the living room of the apartment. The arraignment judge noted that plaintiff had just pled guilty as a youthful offender on another charge of felony gun possession, and set bail at $100,000, which plaintiff failed to make.

About two months later, the indictment came down and plaintiff was arraigned on it. Plaintiff was charged with criminal possession of a weapon in the second degree and other related charges. Plaintiff's bail was reduced to $75,000 to match that of one of his co-defendants, which he still could not make. At neither this bail hearing nor the prior one did plaintiff explain why he was in a house used as a gang hangout that was full of illegal guns.[4]

---

[3] Plaintiff claims in his brief that only three perpetrators, including plaintiff, were arrested and charged, and that others in the residence were not arrested, but a close review of the record demonstrates otherwise. Plaintiff is confusing the fact that one arrest report covered plaintiff and two others, but the record indicates that a total of nine suspects were taken into custody, and likely processed in separate arrest reports that are not in the record before me.

[4] At his deposition, plaintiff's story was that a person he could not identify told him there was going to be a "get-together" at the subject address following a funeral that plaintiff had attended for a "kid" named Kyle whose last name plaintiff did not know and had never known. He also testified that someone living at that address used to date his late sister but he didn't know the name of that person either. Plaintiff further testified that he did not know anyone else who was present at this "get-together" except for one girl whose first name was Zaire.

3

Plaintiff's motion to dismiss the indictment was granted two months later. Based on its review of the grand jury testimony, the trial court reasoned that the gun held by one of the perpetrators in the living room where plaintiff was found could not be attributed to plaintiff because there was no evidence to show that plaintiff was acting in concert with that perpetrator. It further reasoned that the other guns found in the apartment could not be attributed to plaintiff because they were found in bedrooms and bathrooms, which it did not feel were common areas, nor was plaintiff ever observed to have been in these rooms. Additionally, it found that there was no evidence that plaintiff resided in or had any possessory interest in the subject premises. Since there was no probable cause to support the charges, in the trial court's view, the indictment had to be dismissed. The trial court granted the District Attorney leave to re-present the case to another grand jury.

Plaintiff then commenced this action and, after the conclusion of discovery, defendants moved for summary judgment.

## DISCUSSION

At oral argument on the motion, plaintiff's counsel conceded that under these circumstances, given the fluidity of the situation at the time of arrest and the plethora of firearms and gang members, the defendant police officers were entitled to qualified immunity on the false arrest claims. The Court subsequently dismissed those claims.[5] The primary remaining claims are for malicious prosecution and denial of the right to a fair trial.

---

[5] The Court also dismissed plaintiff's false arrest claims because he purported to bring them directly under the 14th Amendment, and there is no direct action for false arrest under the 14th Amendment. See Turpin v. Mailet, 579 F.2d 152, 160 (2d Cir. 1978), vacated on other grounds, City of West Haven v. Turpin, 439 U.S. 974 (1978); see also Albright v. Oliver, 510 U.S. 266 (1994).

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. at 161 (citations and internal quotation marks omitted).

I cannot find any evidence in this record upon which a jury could reasonably conclude that any of the defendant police officers acted with actual malice. Although absent from his brief, at oral argument, plaintiff's counsel relied heavily on the criminal complaint/affidavit filed by Detective Daab, but plaintiff's counsel could not point to anything in it that was false. The criminal complaint simply described exactly what happened as set forth in the undisputed facts above, and then concluded that plaintiff and his two fellow defendants in the criminal case were in constructive possession of a loaded firearm. It did not state anywhere that plaintiff was in physical possession of a firearm. Detective Daab's complaint specifically noted who had the firearms and who was being charged with constructive possession. Apparently, plaintiff claims that the allegation that he was in constructive possession of a firearm was a "false" statement sufficient to support a finding of malice.

When a police officer accurately details the facts leading to an arrest, and then states his conclusion as to whether those facts amount to the commission of a crime, I do not see how that can demonstrate malice. He is not a lawyer, and his conclusion of law is not a "fact" that can be "false." It is the prosecutor who reviews the facts as related, and then makes his own

5

determination as to whether the crime that the officer has identified, or some other crime, has been committed. Beyond that, if the prosecutor reaches his own conclusion that the matter should be pursued, a grand jury must also consider that conclusion and decide whether to adopt it. When both the prosecutor and the grand jury, acting on accurate facts related by a police officer, agree that there is probable cause to believe that a crime has occurred, an allegation that the police officer acted with "malice," made simply because a judge subsequently determined that those accurately-related facts do not constitute probable cause, must fail. See, e.g., McCellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006); Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000).

Plaintiff's attorney appeared to recognize this at oral argument. He combed through the police file, and after failing to demonstrate anything false in Detective Daab's complaint, looked for something that might contain a false factual statement. He seized upon two documents, although neither is mentioned in his brief. One is the arrest report, created by a Detective Alden, who is not a defendant, apparently based on information given by the arresting officer, Detective Haber, who is also not a defendant, and approved by the supervisor, defendant Sargent Mara. In one field of this form, the question is stated: "Gang/Crew Affiliation," under which appears "Name." Detective Alden inputted "yes" in answer to the first question and "Grimy Gang" in answer to the second.

Plaintiff goes to considerable effort to show that he is not a Grimy Gang or other gang member and defendants offer evidence to show that he is, but this disputed fact is immaterial to the determination of whether a genuine issue exists regarding malicious intent. First of all, neither Detective Alden nor Detective Haber is a defendant, so their motives are irrelevant. As to Sargent Mara, a jury could not reasonably conclude that he had actual malice towards plaintiff

6

simply because he approved a form listing plaintiff as a gang member when plaintiff was arrested in a house full of gang members.  Although, unlike Detective Daab's conclusion that plaintiff was in constructive possession of the firearms, Sargent Mara's conclusion, or, more properly, his approval of some other officer's conclusion, that plaintiff was a Grimy Gang member is a factual as opposed to legal conclusion, it is one that is reasonably based on a known fact – plaintiff was in a Grimy Gang hangout flooded with illegal weapons.  The conclusion of membership may have been a mistake; it might have been dispelled with further investigation (although defendants' submissions suggest there is, at least, considerable evidence to show that it is right), but under the circumstances, no jury could see it as evidence of malice, nor of a degree of recklessness amounting to malice.

Finally, and again only at oral argument, and not in his brief, plaintiff points to a post-arrest "search result" form that he alleges Detective Daab completed (defendants deny that it was Detective Daab that completed the form), the purpose of which is describe what was recovered in the search and tied to an arrestee.[6]  In this very lengthy form pertaining to plaintiff, there is a row of questions that asks "Gang Affiliation," "Gang Name," and "Gang Identifier."  Detective Daab answered "Yes," "Unknown," and "Loyalty Tattoo," respectively.  At his deposition, Detective Daab testified in a way that plaintiff interprets as stating that plaintiff had the word "Loyalty" tattooed on him, when in fact, although plaintiff has resplendent tattoos, he does not have one with the word "Loyalty."

It is not at all clear to me that Detective Daab's testimony was that plaintiff actually had the word "Loyalty" tattooed on him or even that Detective Daab was the officer who filled out the form.  Plaintiff's attorney asked him, "Was it, for example, Krips or Blood or Loyalty," to

---

[6] In fact, plaintiff's attorney did not initially cite to this document.  It was referred to by defendants' counsel.

7

which Detective Daab answered, "It says loyalty." Plaintiff's limited follow up questioning could well indicate that Detective Daab was simply referring to what was stated on the form, not what he believed was tattooed on plaintiff. But even drawing the inference in favor of plaintiff's interpretation of the testimony, I cannot see what difference it makes. If Detective Daab had written "tear drop," a tattoo that plaintiff actually has, instead of "Loyalty," it is impossible to contemplate the circumstance where this difference would have caused the prosecutor to decide not to prosecute, especially where the form did not tie the word "Loyalty" to the Grimy Gang (avoiding this by listing plaintiff's gang membership as "Unknown"). There is no evidence in this record that Grimy Gang members tattoo themselves with the word "Loyalty," and plaintiff was prosecuted not because of the presence or absence of a particular tattoo, but because he was apprehended in a house full of guns and gang members. There is no indication at all that any of the arrestees from this incident had the word "Loyalty" tattooed on them. Thus, the single word "Loyalty" on the form not only fails to indicate any malice, but was immaterial to plaintiff's prosecution. Indeed, at neither of plaintiff's bail hearings did the prosecutor ever mention that plaintiff had any connection to the Grimy Gang. Even a false statement cannot be used to show malice if the statement is immaterial. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

The absence of evidence of malice and materiality is not the only problem with plaintiff's malicious prosecution claim. First, the prosecutor's decision to prosecute and the grand jury's decision to indict, based on what I have found to be materially accurate information provided by defendants, creates a presumption of probable cause which plaintiff has failed to overcome. See Manganiello, 612 F.3d at 161-62; Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

Second, I respectfully disagree with the state court's conclusion that there was insufficient evidence of probable cause to support arrest and prosecution. It is axiomatic that probable cause must be determined based on the totality of the circumstances known to the police officers, see Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002), but what the state court did was to effectively isolate each factor and thereby lose sight of the whole.[7]

It is true that just because plaintiff was in a common area (the living room) where another person had a gun does not make plaintiff liable for constructive possession. It is also true that the ultimate resting place of other guns in bedrooms cannot be attributed to plaintiff without information that he had some residency or regular access to a particular bedroom where a gun was found. But there was a lot more going on here. Police had accurate information that this was a gang gathering. See Panetta v. Crowley, 460 F.3d 388, 295 (2d Cir. 2006). And perhaps most importantly, the sheer quantity of guns and the scrambling of the occupants upon the police entry made it perfectly reasonable, in my view, for the police, and later the prosecutor, to conclude that there was probable cause to believe that each of the occupants had knowledge and the potential to access one of the many guns that was found, and that it was for a jury to determine whether to accept plaintiff's story that he had just stopped by for a post-funeral party. See United States v. Heath, 455 F.3d 52, 57 (2d Cir. 2006); see also Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir. 2007). Thus, while I am content to rely on plaintiff's concession of qualified immunity to dismiss the false arrest claims, I have no difficulty holding that there was indeed probable cause for prosecution.

---

[7] Additionally, it is important to note that in dismissing the charges against plaintiff, the state court authorized the prosecution to re-present the charges to another grand jury, making it unlikely that the state court proceedings terminated in plaintiff's favor for purposes of his malicious prosecution claim. See Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995).

The dismissal of the malicious prosecution claim defeats the denial of a fair trial claim for the same reasons. That claim requires the making of a material false statement in the context of a prosecution, see Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997), and there is none here.

Plaintiff's claim under 42 U.S.C. § 1981 is frivolous and borderline sanctionable. There is no evidence whatsoever of racial discrimination in this case. See Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 1999) (noting that to establish a claim under Section 1981, a plaintiff must present facts demonstrating defendants' intent to discriminate on the basis of race); see also Albert v. Carovano, 851 F.2d 561, 571 (2d Cir. 1988).

Similarly, there can be no conspiracy claim under 42 U.S.C. § 1985 since plaintiff's constitutional rights were not violated, and without an underlying constitutional tort, plaintiff's conclusory *Monell* claim also fails. His "retaliation" claim fails for the same reason, and for the additional reason that he seeks to proceed directly under the 14th Amendment for that claim which, as noted above, he may not do.

In addition, because plaintiff's state law claims fail for the same reason as his federal claims, and for the additional reason, which plaintiff has not disputed, that he failed to file a notice of claim to pursue those state law claims, they are dismissed as well.

## CONCLUSION

Defendants' motion for summary judgment is granted, and the complaint is dismissed.

The Clerk is directed to enter judgment.

**SO ORDERED.**

                                                                  U.S.D.J.

Dated: Brooklyn, New York
          April 11, 2014